and L. Ms. Toler for the petitioner, Mr. Shelton for the respondents. May it please the Court, Emily Toler for the Secretary of Labor. This case is about two principles that are vital to the enforcement of the Mine Act and to the protection of miners' safety and health, that when determining whether violations are significant and substantial, judges must neither consider redundant safety measures nor assume that miners will exercise caution. The judge in this case did both. So we asked the Court to vacate that decision and to remand for the judge to re-weigh the evidence considering only relevant evidence. As a preliminary matter, the Commission in this case split two to two about whether to affirm the judge's decision. So we believe that the proper decision for the Court to review is in fact the judge's decision, the judge's findings of facts and conclusions of law, since the Commission itself did not articulate one rationale that would be amenable to judicial review. And the judge's decision is flawed first because the judge did consider redundant safety measures, which the Commission and this Court have consistently held are irrelevant to the question of whether a violation is S&S. Is the government's position that surrounding circumstances can never be considered at any time? I think that is what the cases have held. My reading of the cases, specifically the Jim Walter and Cumberland Coal cases that this Court has decided, have never made a distinction about whether other safety measures are relevant. No, we said you can't consider surrounding circumstances in the causation determination under the statute, but we explicitly noted, without any whiff of disapproval, that the agency did consider surrounding circumstances on the separate statutory element of whether or not there was a hazard. I suppose my question, I will ask you a question respectfully, Judge Kessler, is the separate element of whether there is a hazard in the test, the four-part test, or in the statute. I suppose I'm just confused about that. Well, I mean, the cases to me are somewhat confusing. Our cases go off the statute, which as I read it, you need a violation, you need a hazard, and you need a causal connection. And we say you can't consider all of this surrounding stuff on the causation question. We explicitly leave open the hazard question.  The Commission's four-factor test, where if you look at that, a lot of people consider this stuff at factor three, and then the Fourth Circuit, and now the Commission says, well, it's not a factor three question, it's a factor two question. And that goes all the way back to Mattis itself. I will certainly agree that the law is not exactly clear in this area. And it just seems very weird to me as a conceptual matter that you could never consider surrounding aggravating or mitigating circumstances, no matter how much they change the calculus. Well, I don't mean to dodge the question, but I'm going to dodge the question a little bit, because I think that it is clear, well, the case here involves step three, which is a question of whether an injury was reasonably likely to occur. And I do think that, especially after the Fourth Circuit's decision in Knox Creek, that it's clear that redundant safety measures, at least for step three, don't matter. But there are some cases where in the course of the Fourth Circuit shifting some of the courts say, well, okay, now we'll consider this at step two. I mean, I'm just trying to pin down whether, you know, if this goes back, it goes back because no one can ever consider surrounding circumstances for any purpose at any time, or whether it goes back and then there's a question of, was a step two issue preserved? Could the commission reopen, given the changing law on two versus three goes to the breadth of what we would say on remand? I don't think reaching that issue is necessary. The commission noted, I think noted it, but also felt it wasn't necessary to decide it because the judge's findings, regardless of what test is applied at step three, were at least reviewable. And I think that that would be, if the court doesn't want to reach the question of whether hazards are irrelevant at all steps, although I think at the very least three and four, and certainly should be two as well, if not all of them, then I don't think the court has to go there. But if the court is more concerned about that, I know that we sort of have to. So the only issue in this case, step three? The issue in this case is step three because that's what, that's where the judge made her findings. Step hazard wasn't in dispute. That's, well. Not in dispute now. Not in dispute on appeal, that's correct. So the question really is step three about whether it was likely that an injury would occur. And I think it's one thing at least that is clear in this area, or at least in the judge's decision, is that she considered, or her decision is based almost completely on the existence of safety measures that are required in addition to the roof control plan. It's based on her finding that minors would be protected by other pieces of equipment, that they would be forbidden from going under unsupported roof or even near it in many cases. And those are safety standards that MSHA requires in addition to the roof control plan because mines are dangerous and because overlapping safety measures are important to safety and health. If we thought that there was merit to your argument, would you, is there a reason to consider it as a substantial evidence argument as opposed to an error of law argument? I think at least with, in the Cumberland case, this court did consider the, or consider redundant safety measures as a substantial evidence challenge, but that was brought, that was framed by the operator. It was the operator's argument that redundant safety, or that substantial evidence didn't support the finding in that case. And so to the extent that the court has done that in the past, I think it, that wasn't the Secretary's position and isn't the Secretary's position now. But even if the court does consider it that way, I don't think... Can I just ask you, when you say it's not the Secretary's position, I just want to know, you're saying it's not the Secretary's position because you think it's just wrong to think of it as substantial evidence or is there some disadvantage? I don't think there is a disadvantage. I just think that it is, it makes more sense to think of the question as a legal question, particularly because the commission at least has held that considering minor caution, which is kind of conceptually parallel, is an error of law. And I don't think that, or it's difficult for me to see a distinction between the two. But even assuming that the court did determine that the issue is substantial evidence, substantial evidence is relevant evidence. And the commission and this court have repeatedly characterized redundant safety measures as irrelevant. And the judge's findings, again, are completely based on those facts that are irrelevant. And so I don't think that there is substantial evidence to support it, but we do concede that a remand would be required for the judge to consider only the relevant evidence. And it is possible that the judge would reach the same conclusion on remand only considering the evidence of the violation and the hazard that the violation contributes to. I also want to discuss briefly that there is no distinction between primary and secondary measures for the purposes of the SNS analysis. As the commissioners who are in favor of reversing the judge in this case noted, there's never been any basis in any decision from the commission or the court of appeals in the SNS context that has suggested that some mandatory standards are relevant, or some other redundant standards are relevant, but some aren't. It doesn't make sense in terms, or it's certainly foreclosed by precedent as well. In Cumberland, this court rejected an operator's challenge that measures that sought to prevent a hazard from occurring and measures that sought to prevent injuries from occurring if the hazard did occur were relevant. The court said no and rejected both of those. And so I think that should be dispositive of any distinction between primary and secondary measures. And just briefly, the judge also erred by assuming that minors would exercise caution, which the commission has repeatedly held is also not relevant because the hazard that the violation contributes to exists regardless of whether minors act cautiously. It's true that the judge... And the hazard here is exactly what? The hazard was a roof fall that could break back through existing roof supports where minors were working. That it could, or the roof collapse that did happen? I'm a little unclear about the timeframe. It's not a model of failure. Right, there was a roof collapse. There was a roof collapse, but that was not the basis for the citation. The basis for the citation was that the deep cut in adverse roof conditions put so much stress on the pillars and on the existing roof that it could, that a fall could break back through to where minors were working, but it was not based on the roof fall that did occur. Thank you. Thank you, counsel. May it please the court, Billy Shelton on behalf of Consolidation Coal Company. In this case, the secretary's appeal lacks merit because the ALJ's decision is supported by substantial evidence and is in accordance with law. The ALJ conducted a proper analysis of the evidence in this case. She made findings that were based upon the evidence that was in this case. In fact, contrary to what my opponent has told you, she made 11 different findings in support of her determination that this violation would not result or be likely to cause significant substantial injury, which is one of the main theses. But embedded in that analysis was the proposition that she could consider other safety measures. One safety measure she figured, Your Honor, was this. And I think it goes to the whole surrounding thing. What happened in this case was you had an extended cut alleged by MSHA that they said put more stress on the roof, and the inspector testified he was concerned that the roof, the fall, if it fell, which in this case it did and this did not occur, but if it did, it might extend out into bolted areas where minors might be. At trial, we introduced evidence to show the judge that there would be no minors within a reasonable area that if it did extend out, minors wouldn't be present there. We introduced proof to the ALJ that the minor operator, for example, has a remote control device. He stands backwards of the boom of the minor, and he's therefore 50 feet away from where the cut is being taken. We also showed, the MSHA brought up, well, you also have to take gas checks. We said, well, minors only progress to the second row of boats. They have a 20-foot probe that they stick and extend out to measure. They have to go under the affected area to bolt it, as I understand. Your response to that is when they do that, they have this, what is it, ATRS? First of all, Your Honor, I think the proper analysis- I would think that that might or might not be a really good argument in your favor, depending on how well an ATRS works, except there seems to be this case law that you just have to ignore the ATRS. Well, I don't think you do, because I think what the case law says is when you look at the nature of the violation, you can't consider redundant safety measures. The cases, for example, in the Buck Creek case, what Buck Creek was about was it was an accumulation violation, and there was a question as to a fire. What the operator said- Let's just tie this one down. The violation is the cut. The cut. The violation is the cut. And people have to go under that area to fix the top of the mine. But, Your Honor, that happens every second in every mine in the United States. When you take a cut, you're- I understand. I understand. You have to then go in and bolt that top, and miners do that every day. And that might be a larger or a smaller safety problem, depending on how well the other protections work. Well, it's not a safety problem at all, Your Honor, because it's part of the normal mining process. When you make a cut, you have an area of roof that you've exposed that's not yet bolted, so then miners go in. They put up their ATR systems to support the roof to provide roof control for the bolting procedure. What is wrong with the following reason why you lose the case, which is no matter how safe the ATRS, and no matter how sensible it would be for someone to consider that, we have cases that say you only look at the violation, and the violation is the cut, and the ATRS is not part of the violation. So you just have to pretend it's not there. But again, I think the cases that talk about redundant safety are not the same as what you have in this case. Because again, going back, for example, the Buck Creek case, what the operator said in that case was this is not significant substantial violation because if a fire occurs, then we've got extra water facilities. We've got a fire retardant belt so that the fire will not... But the fact of the nature of the violation, the fire itself is dangerous, so therefore you don't get to consider that when you determine whether or not this is a violation or not. But the question... I agree with you that a lot of the cases seem very different on the facts, right? To say there's going to be a fire and an explosion, but don't worry about it because we have a But in this case, the problem is the language in our decisions just seems broader. Well, but again, I go back, Your Honor, to the situation that in this case, the judge made one comment in a report that said, well, you know, the miner's not going to be exposed because he's away. The guys doing the gas check aren't going to be exposed. All these people are not going to be exposed. But, and also, by the way, when the miners go in to correct and bolt the top, they've got the benefit of the ATR system. That's the one comment she made. She never made any other comments that basically said, this is the main thing that I'm relying upon. You know, I try a lot of MSHA cases, and a lot of times, you know, where the operator makes the argument that, well, no one will be exposed here. MSHA comes out and says, well, but in the last 12 months, this operator's been cited four times for miners going within an unsupported group, or an inspector may say, well, I've seen footprints in that area, which means to me that people have gone into that area. Again, it's a part of the judge's fact-finding determination and ultimate decision-making that she takes all of that into consideration, looks at all the facts, and then determines is it reasonably likely that a significant injury will occur as a result of the condition cited in the violation. And in this case, she did exactly what everyone wants her to do. She did that. She set out at least 13 different factors that supported her determination that this violation was unlikely to lead to a significant injury to the miners in this mine. And, you know, the Secretary's kind of picked out this one little statement she makes when she says, and oh, by the way, when the miners go in to correct this situation. I'm sorry, ma'am. I didn't see 13 things. I'm sorry, ma'am. It may have been 11. Well, so I'm on day 42, 43, and I saw the prohibition on miners entering, which is a ATRS, the tighter bolting pattern. I'm not seeing 13 or 11 or... Am I not looking on the right page? I didn't count them all, Your Honor. I know that in the commission decision, the affirming commissioners made a point and actually set that out in their decision. It was either 11 or 13. I don't recall, ma'am. I may have misspoke. What else do you see here in the ALJ decision? I know that she relied upon, you know, the location of the people, the fact that the roof actually did fall and that, you know, it didn't extend outside the bolt pattern. There was a tighter bolting pattern. Also, that the area was bolted immediately thereafter, therefore, I guess, cutting down the time upon which miners could be exposed to the hazard. That was one consideration she made. I'm sorry, Your Honor, I didn't count when you were reading them off, but I know that in the... The 11, I think you're referring to, is not in the ALJ's decision. It's in the commission decision. It's the affirming commissioners indicated in their decision. Right, but we can't rely on their fact-finding or things like that. So, as a concurrence, we don't actually have anything other than redundant safety measures in the ALJ decision. I think there's lots more in the... In the decision? Not in the record, in the decision. Oh, in the decision, Your Honor. ALJ's decision? Oh, yeah. She cites to all the reasons why, and then she mentioned the one being that when miners go into bolt, they have the ATRS to produce them. But she cites other analyses and reasons for her determination that the Matthews test was... Page 43 that you say she's citing it, or can you tell me? I'm just not understanding what else you're reading. Well, she goes... Yeah, I think her analysis, you're correct, Your Honor, is on page 42 and 43, and beginning at the bottom of page 42, that full paragraph there, she discusses her determination as to why it's unlikely that... And that extends on to page 43. And then again, you know, she makes one comment about the issue about when the miners go in. She says, you know, miners generally are not allowed underneath the last row of bolts except to extend ventilation, in which the continuous miner's ripper head must be placed against the roof, or to operate the roof bolting machine, in which case the ATRS supplemental roof support. Aren't those all redundant safety measures? I'm confused. Maybe I misunderstood your point. I thought you were saying that she relied on a whole bunch of things, only a few of which were these redundant safety measures. This was just a little problem in her decision. Well, first of all, I don't think it's a redundant safety measure, Your Honor, because again... But if it were... If it were, she relied in one comment on a redundant safety measure. I would agree if you determine that's a redundant safety measure, one time. The other thing she relied upon are not redundant safety measures. The fact is, if no one's in the area exposed to the hazard, how can there be a reasonably likely that a substantial miner... Why doesn't that rely on miner caution? Well, again, there's as many cases on the other side where... For example, Your Honor, if you look at the case right before in the judge's decision, I think it's on joint appendix page 39, the judge determines that an accumulation violation is not S&S because there's no ignition source. Well, you could say, well, she was improperly considered that because she considered that miners would act safely and one of them wouldn't light a cigarette while he was underground. So, I mean, again, it's just pick and choose. She performed an analysis based upon the facts that got presented to her and decided a case looking at all the evidence that got presented. This, like the affirming commissioner said, this is a substantial evidence case looking at the judge's decision. Some other judge may have considered otherwise, but this is a substantial evidence case and the judge's decision is supported by substantial evidence and should be affirmed.  Thank you, Your Honor. I have just one factual and one legal point to make in rebuttal. Actually, every single one of the judge's findings in this case did rely on either minor caution or redundant safety measures. Those findings were miners training, what miners were permitted to do, the ATRS system, the titer bolting pattern, and the existence of resin bolts. Every single one of those things is either required by MCHS or is not required by MCHS. And legally, resolving this case doesn't require the court to do anything more than to affirm existing and well-settled law, which is that redundant safety measures are irrelevant to the SNS analysis. So, you mentioned a remand. What is the point of the remand for? The remand is for the judge to— Just reinstate the penalty or to take a second—do you take a second stab? I don't think there would be any more evidence. It would just be the judge considering the evidence that is relevant to the violation without the— What other evidence needs to be considered? I think the evidence that needs to be considered is there was a deep cut, and the judge found that it contributed to the hazard of a roof fall. The judge just needs to determine now, without assuming that miners were protected by other pieces of equipment, without assuming they won't go under or near unsupported roof, was there still a reasonable likelihood that any of the miners working in the area would be injured by a roof fall? But I'm just trying to figure out from the decision we have in front of us on the record. So, in your view, it's still open whether or not this was a serious and substantial violation, that there are permissible bases on which that could be found? Yes, that's correct. And in your view, is it open, perhaps, in other cases for people to argue redundant measures bearing on prong two? I know you're saying this is not a prong two case. I think the state of the law is a little influxed after the Newtown decision. I think operators are free to argue it, and I look forward to arguing right back at them. Okay. Thank you, counsel. Case is submitted.
judges: Srinivasan, Millett, Katsas